**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ABIGAIL RATCHFORD, EVA PEPAJ, JAIME EDMONDSON LONGORIA, LUCY PINDER, MARIANA DAVALOS, ROSIE JONES, ARABELLA DRUMOND, SARA UNDERWOOD, and URSULA YVONNE SANCHEZ a/k/a URSULA MAYES, | CIVIL ACTION NO. |
| Plaintiffs, | 3:19 CV 00865 |
| - against - | |
| CARM-LOR ENTERTAINMENT INC d/b/a MYSTIQUE GENTLEMAN'S CLUB and MICHAEL FAZIO, | |
| Defendants. | JUNE 4, 2019 |

Plaintiffs ABIGAIL RATCHFORD, EVA PEPAJ, JAIME EDMONDSON LONGORIA, LUCY PINDER, MARIANA DAVALOS, ROSIE JONES, ARABELLA DRUMOND, SARA UNDERWOOD, URSULA MAYES (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants CARM-LOR ENTERTAINMENT d/b/a MYSTIQUE GENTLEMAN'S CLUB and MICHAEL FAZIO (collectively "Defendants"), respectfully allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Mystique, which has locations in Stamford and Bridgeport, Connecticut

- 1 -

(collectively, "Mystique" or the "Clubs").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of privacy and publicity as pertains to Defendants' unreasonably placing of each of them in a false light before the public; d) violation of the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat.§ 42-110b; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because no Plaintiff is a resident of Connecticut, Defendants are a Connecticut business and resident, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

6.      As set forth immediately below, Plaintiffs are, and at all times relevant to

this action have been, professional models who reside throughout the United States and in the United Kingdom.

7.      According to publicly available records, defendant CARM-LOR ENTERTAINMENT, INC. ("Carm-Lor") is a corporation formed under the laws of the state of Connecticut, with its principal place of business located at 2548 Main Street, Bridgeport, CT 06606.

8.      Upon information and belief, defendant MICHAEL FAZIO ("Fazio") is a resident of the state of Connecticut, and at all relevant times was the owner, principal and/or chief executive officer of Carm-Lor.

9.      Venue is proper in the United States District Court for the District of Connecticut because Bridgeport, Connecticut is Defendants' principal place of business.

10.     A significant portion of the alleged causes of action arose and accrued in Bridgeport and Stamford, Connecticut and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bridgeport and Stamford, Connecticut.

## PARTIES

### Plaintiffs

11.     Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Lucy Pinder ("Pinder") is a well-known professional model, and a resident of the United Kingdom.

13.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

- 3 -

14.     Plaintiff Jaime Edmondson-Longoria ("Longoria") is a well-known professional model, and a resident of Pinellas County, Florida.

15.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model and a resident of Los Angeles County, California.

16.     Plaintiff Rosie Jones ("Jones") is a well-known professional model and a resident of the United Kingdom.

17.     Plaintiff Arabella Drumond ("Drumond") is a well-known professional model and a resident of the United Kingdom.

18.     Plaintiff Sara Underwood ("Underwood") is a well-known professional model, and a resident of Columbia County, Oregon.

19.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model and a resident of Orange County, California.

***Defendants***

20.     According to publicly available records, defendant Carm-Lor is formed under the laws of the state of Connecticut.  During times relevant to this action, Carm-Lor operated Mystique Bridgeport, located at 2458 Main Street, Bridgeport, CT 06606 and Mystique Stamford located at 44 Poplar Street, Stamford, CT 06907.

21.     Upon information and belief, Fazio, in his capacity as owner of Carm-Lor maintains operational control over Mystique including all advertising relating thereto and did so during all times relevant to the allegations herein.

## FACTUAL ALLEGATIONS

22.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies,

- 4 -

magazines and individuals for the purpose of advertising products and services.

23.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

24.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed, or were otherwise associated, affiliated or connected with Mystique.

25.     In the case of every Plaintiff, such appearance was false.

26.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

27.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

29.     Ratchford is, and at all times relevant to this action was, a professional model and actress, whose deft use of social media, combined with the use of provocative pictures helped land her on numerous men's websites, a six-page print

spread in a popular Australian men's magazine, and also led to her being selected to audition for parts in *Maxim*, a feature film, and television shows found on ABC and E! Networks. She has over 8.7 million followers on Instagram, 4.2 million followers of Facebook, and over 672,300 followers on Twitter.[1]

30.     That we know of, Ratchford is depicted in the photos in Exhibit "A" to promote Mystique on its Instagram page. This Image was intentionally altered to make it appear that Ratchford was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

31.     Ratchford has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Pepaj is a successful and highly in demand runway and high fashion model, who has appeared in many print campaigns, and commercials for products such as Diet Coke. Pepaj has also appeared in the films: *The Hand Off*, *Interior: Leather Bar*, *The Romp*, and on HBO's *True Detective*.

33.     That we know of, Pepaj is depicted in the photos in Exhibit "B" to which were repeatedly published on Mystique's Facebook and Instagram page.  These Images were intentionally altered to make it appear that Pepaj was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

---

[1] In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

34.     Pepaj has never been employed at Mystique, has never been hired to endorse any Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Pinder is an English model, actress, host, businesswoman, and one of Great Britian's most famous glamour models.  Pinder has been featured in hundreds of magazines, including *FHM, Loaded, Nuts*, and the *Daily Star*, as well has appeared on numerous occasions on the *FHM* "100 Sexiest Women in the World" list.  In addition, Pinder has an established and developing acting career with many TV appearances and Film credits, and has appeared on shows such as *I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Dream Team and Bo! in the USA*. Pinder was a contestant on *Celebrity Big Brother*, had starring roles in films such as *Strippers vs Werewolves, The Seventeenth Kind, Age of Kill and Warrior Savitri*.

36.     That we know of, Pinder is depicted in the photos in Exhibit "C" to promote Mystique on its Facebook page.  This Image was intentionally altered to make it appear that Pinder was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

37.     Pinder has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Longoria is a graduate of Florida Atlantic University, a former police officer

and Miami Dolphins cheerleader, and was the January 2010 *Playboy* Playmate of the Month.  Edmondson was a participant in the competitive reality TV series *The Amazing Race 14*, has served as a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio, and has appeared in *The Bunny House* documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets.  Edmondson has two children with her husband, Major League Baseball superstar, Evan Longoria.

39.     That we know of, Longoria is depicted in the photos in Exhibit "D" to promote Mystique on its Facebook and Instagram pages.  This Image was intentionally altered to make it appear that Longoria was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

40.     Longoria has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.     Davalos, who grew up in Colombia, is one of the most well-known and successful models in Latin America.  Davalos has served as the face of Nacar cosmetics and has appeared in *Maxim*, *Imagen*, *Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans* and *Satori*. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her Instagram followers of nearly 500,000 and over a quarter of a million Facebook fans.

42.     That we know of, Davalos is depicted in the photos in Exhibit "F" to promote Mystique on its Facebook page.  This Image was intentionally altered to make it appear that Davalos was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

43.     Davalos has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Jones is a glamour model born in Middlesex, England, who is regularly featured in many of the UK's top men's magazines.  Jones started modeling at 17, and has appeared in many magazines, including *FHM, Loaded, Nuts,* and *Front Army.*  She has over 270,000 followers on Instagram, over 270,200 followers on Twitter, and over 966,430 followers on Facebook.

45.     That we know of, Jones is depicted in the photos in Exhibit "G" to promote Mystique on its Facebook page.  This Image was intentionally altered to make it appear that Jones was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

46.     Jones has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Drummond is an English model, artist, celebrity and businesswomen, who has has gained worldwide interest, fame and growing audience for her beauty, style,

tattoos and Neo burlesque inspired show.  Drummond studied at the prestigious fashion institution Central Saint Martins, then decided to go back to her roots in dance and performance art and has travelled the world in recent years as a fire artist. Drummond was featured on the Discovery channel where she worked on larger fire stunts, and the show gave an insight into a human fire ball scene with Drummond as the main stunt girl. Drummond specialized in Vapor transfer trick fire acts as well as performing her own brand of burlesque style shows in the UK and Internationally. Drummond has performed as a solo artist and featured in circus troupes including the famed Cirque Le Soir International Tours.  Drummond has performed in venues worldwide including Cafe Opera (Stockholm), Pure (Las Vegas), New Asia Bar (Singapore), Dragon-I (Hong Kong), Playboy Mansion (LA), Cirque Le Soir (London) Gotha (Cannes) and Suzie Wong's (Kuala Lumpur).  Drummond has performed onstage with artists such as Motorhead, Rob Zombie, Steel Panther and Will I Am in the Isle Of Malta. As Drummond's career as a performer evolved she began working with major photographers seeing both her beauty and skills.  Very soon was working closely with many UK based magazines as a cover girl and feature model but also was asked to become a magazine contributor, a columnist for Front Magazine and Guest Editor! Drummond has worked with dozens of UK Magazines and appeared on countless International covers.  Drummond has had the opportunity to work with some world famous photographers such as Simon Emmett and Bettina Rheims.  In 2013 Ms. Drummond designed, built and founded the original concept store One By One, a London based boutique gender neutral fashion with a tattoo lounge in the basement. Drummond is the "Face" of One by One and is not only the owner but the creative

driving force and public spokeswoman for the brand. Drummond has hosted pop up events and curated installations in her store with brands such as Kodak, Katie Eary, Kehlani, Wiz Kid, Tiwa Savage and Travis Scott. One By One also saw Kanye West pass through the doors for a DJ set and private album listening party for 'Life Of Pablo' while he was in the UK for his British Awards performance.  Drummond's Celebrity Tattoo clients include Jordyn Woods, Skepta, Asap Rocky, GoldLink, Scooter braun and Kehlani to name a few.

48.     That we know of, Drummond is depicted in the photos in Exhibit "H" to promote Mystique on its Facebook page.  This Image was intentionally altered to make it appear that Drummond was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

49.     Drummond has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

50.     Underwood is a world-famous model who first appeared on the cover of *Playboy* in October 2005, was *Playboy*'s Playmate of the Month for July 2006, and was named *Playboy's* Playmate of the Year for 2007.   Underwood has not only been featured in various *Playboy* videos, but has likewise appeared, as herself, in the major motion pictures *The House Bunny* and *Miss March*.  She has also appeared on episodes of such reality TV series as *Kendra*, *The Girls Next Door*, and *Bridget's Sexiest Beaches*.  Underwood also works regularly in television as a continuity announcer for the Blackbelt TV cable network, and has served as co-host of G4's *Attack*

*of the Show.*  Underwood has more than 9 million Instagram followers, over 700,000 Twitter followers, and more than 4.5 million followers on Facebook.

51.     That we know of, Underwood is depicted in the photos in Exhibit "I" to promote Mystique on its Facebook page.  This Image was intentionally altered to make it appear that Underwood was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

52.     Underwood has never been employed at Mystique, has never been hired to endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

53.     Mayes is a well-known model whose career started with a spread in *Maxim* magazine, and who has appeared in countless publications since then, including *Vogue*, *Elle*, *In Style*, *Cosmopolitan*, *Marie Claire*, and many more. Mayes has appeared on television on *Deal or No Deal*, *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*, and has appeared in commercial campaigns for Coronet Diamonds, Volkswagen, Subaru, and Bacardi, to name a few. She was also the cover model and star of the game *Juiced 2: Hot Import Nights*, and likewise serves as a paid spokes model for a global events company.

54.     That we know of, Mayes is depicted in the photos in Exhibit "J" to promote Mystique on its Facebook and Twitter pages.  This Image was intentionally altered to make it appear that Mayes was either a stripper working at Mystique, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

55.     Mayes has never been employed at Mystique, has never been hired to

endorse Mystique, has never been associated, affiliated or connected with Mystique, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same

***Defendants' Business***

56.     Upon information and belief, Defendants operated, during the relevant time period, Mystique Stamford and Mystique Bridgeport, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

57.     Upon information and belief, and in furtherance of its promotion their promotion of the Clubs, Defendants own, operate and control Mystique's social media accounts, including its Facebook, Twitter, and Instagram accounts.

58.     Defendants used Mystique's Facebook, Twitter, and Instagram accounts to promote Mystique, and to attract patrons thereto.

59.     Defendants did this for their own commercial and financial benefit.

60.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Mystique, that she endorsed the Clubs, or that she was otherwise associated or affiliated with the Clubs.

61.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Mystique to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business

revenue, profits, proceeds, and income.

62.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Mystique and at no point have any of the Plaintiffs ever endorsed Mystique, or otherwise been affiliated or associated with Mystique.

63.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

64.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

65.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

66.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

67.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Mystique by and through various marketing and promotional mediums including, without limitation, Mystique' website, Twitter, Facebook, and Instagram.

68.     Defendants showcased Plaintiffs' Images on Mystique social media pages to create the false impression that Plaintiffs worked at Billy Dean's, endorsed same, or were otherwise associated or affiliated with same.

69.     Defendants did so to attract clientele to Mystique, promote Mystique, and thereby generate revenue for Defendants.

70.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Mystique.

71.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

72.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

73.     This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

74.     At no point were any of the Plaintiffs ever affiliated with Mystique, or

Defendants.

75. Each of Plaintiffs' Images was used without her consent.

76. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

77. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

78. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Mystique website, Twitter, Facebook, or Instagram accounts.

79. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

80. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

87. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

88. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described herein.

89. As set forth herein, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Mystique, or agreed to appear in Mystique' advertisements.

90.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

91.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Mystique.

92.     Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

93.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

94.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

95.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

96.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

97.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98.     The provisions of the Lanham Act, 15 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

99.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Mystique, or worked at, sponsored, or approved of Mystique' goods, services or commercial activities.

100.    This was done to promote and attract clientele to Mystique, and thereby generate revenue for the Defendants.

101.    Thus, this was done in furtherance of Defendants' commercial benefit.

102.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Mystique, nor worked at, sponsored, or approved of Mystique' goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Mystique.

103.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

104.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of

the Club, and the goods and services provided by the Club.

105.    Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Right of Privacy: Appropriation of Likeness)**

106.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.    As set forth herein, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

108.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

109.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Mystique' website or related social media accounts as part of Defendants' advertising campaign.

110.    At all relevant times, the Mystique' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

111.    Mystique website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

112.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Mystique.

113.    At no point did any Defendant ever receive permission or consent to use

any Plaintiff's Image on their website or social media account.

114.    Defendants were at all relevant times aware that they never received any

Plaintiffs' permission or consent to use their Images on any website or social media

account, or on any other medium, in order to promote the Club.

115.    At no point did Defendants ever compensate Plaintiffs for its use of their

Images.

116.    No applicable privilege or authorization exists for Defendants' use of

Plaintiffs' Images.

**FOURTH CAUSE OF ACTION**
**(Right of Privacy: False Light)**

117.    Plaintiffs hereby repeat and reallege each and every allegation set forth in

the preceding paragraphs as if fully set forth herein.

118.    As set forth herein, Defendants have violated each Plaintiff's common law

right to privacy under Connecticut law.

119.    Defendants have done so by appropriating each Plaintiff's likeness for

commercial purposes without authority or consent and then portraying each Plaintiff in a

false light in Mystique' advertisements.

120.    Specifically, Defendants invaded and violated Plaintiffs' privacy and

portrayed them in a false light by creating the false impression with the consumers that

Plaintiffs were either strippers at Mystique, endorsed same, were affiliated, associated,

or otherwise connected with same, or had agreed to promote same.

121.    Affiliation with a strip club could lead to significant potential career and

personal damage to a professional model because it could lead other clients to refuse to

work with her or drop her as a model.

122.    At all relevant times, the Mystique' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

123.    Mystique website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

124.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Mystique.

125.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

126.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

127.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

128.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b)**

129.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.    Defendants operated Mystique' website and social media accounts in order to promote the Mystique, to attract clientele thereto, and to thereby generate revenue for Defendants.

131.   As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

132.   Defendants published Plaintiffs' Images on Mystique' website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

133.   As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

134.   Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Connecticut law.

135.   Defendants advertising practices offends the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

136.   Defendants advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Mystique.

137.   Defendants advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Mystique.

138.   There are no benefits to Defendants advertising practices as set forth herein except a benefit to Defendants own commercial interests.

139.   As a result of Defendants' unauthorized and misleading publication of

Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

140.   As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.


## SIXTH CAUSE OF ACTION
### (Defamation)

141.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

142.   As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

143.   Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

144.   None of these representations were true.

145.   In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

146.   Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the

Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

147.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

148.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

149.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

150.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

151.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

152.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

153.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

155.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Mystique websites and social media accounts.

156.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

157.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and Connecticut, were not violated.

158.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted and had not paid.

159.    Defendants violated said duty by its negligent hiring, screening, retaining,

supervising, and/or training of its employees and agents.

160.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

161.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

162.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

163.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

164.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

165.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

166.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

167.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

168.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

169.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

170.   Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

171.   Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

172.   As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

173.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

174.   Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

175.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

176.   Although Defendants have availed themselves of the benefit of being

- 27 -

associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

177.   Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

### DEMAND FOR JURY TRIAL

178.   Plaintiffs demand trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

THE PLAINTIFFS, ABIGAIL
RATCHFORD, EVA PEPAJ, JAIME
EDMONDSON LONGORIA, LUCY
PINDER, MARIANA DAVALOS, ROSIE
JONES, ARABELLA DRUMOND, SARA
UNDERWOOD, and URSULA YVONNE
SANCHEZ a/k/a URSULA MAYES,

/s/ John J. Radshaw III
John J. Radshaw III (ct19882)
900 Chapel Street, Suite 620
New Haven, CT 06510
203.654.9695 | 203.721.6182 f
jjr@jjr-esq.com

and

John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming